



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FREDERICK E. TOOLEY,

            Petitioner,

    v.

CHARLES ZIMMERMAN,

        WARDEN, etc., et. al.,

            Respondents

:   CIVIL ACTION NO. 00-CV-0978

:

:   (Judge Caldwell)
:   (Magistrate Judge Smyser)

:

:

:

:

**FILED
SCRANTON**

JUL 1 1 2001

PER _____
DEPUTY CLERK

RESPONDENTS' BRIEF IN OPPOSITION
TO PETITIONER'S MOTION TO REOPEN JUDGMENT

William P. O'Malley
    Assistant District Attorney
Office of the District Attorney
Lackawanna County Courthouse
Scranton, PA  18503

(570) 963-6717



## TABLE OF CONTENTS

THIS TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-iii

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv-v

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2-27

    1.     Because the denial of petitioner's habeas petition was based upon the court's independent review of the record (and because the record, when measured against the provisions of 28 u.s.c.§ 2254(d)(1)&(2)  Fully supports denial of petitioner's habeas petition) the inattentiveness or not of petitioner's counsel to procedural aspects of the case has no genuine bearing upon the correctness of the court's order which denied the petition and ordered the case closed............................1-9

        1.A.    An independent review of the record confirms that the order of dismissal was entirely in harmony with the provisions of 28 U.S.C.§ 2254(d)(2). . . . . 3-5

        1.B.    An independent review of the record discloses that the order of dismissal was entirely in harmony with the provisions of 28 U.S.C.§ 2254(d)(1). . . . . 6-10

    2.     The remedy, if any, which petitioner might have had following entry of the final judgment dismissing his petition and ordering the case closed was appeal; petitioner's rule 60(b)(6) motion should not properly be permitted to function as a substitute for petitioner's obligation to have appealed if he was aggrieved by the final judgment of dismissal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

    3     Because petitioner's claim was properly 'heard' through the court's ". . .*independent review of the record*. . ." and because the claim was properly 'determined' through the court's legally correct ruling that ". . .*the petition for a writ of habeas corpus is denied.* . . ." the repetitious "on the merits" contentions appearing in petitioner's brief are germane to nothing of legal significance;  whether petitioner did or did not have an evidentiary *hearing on the merits* of his first petition has legal bearing only on the question of whether the court's implicit application of 28 U.S.C.A. § 2244 was legally correct and no bearing whatever on whether petitioner's rule 60(b)(6) motion should be granted or denied. . . . . . . . . . . . . . . . . . . . . . . . . 11-14

4.     Petitioner is not entitled to rule 60(b)(6) relief because his application for such relief was not, as the rule requires, filed "within a reasonable time." . . . . . . . . 15-27

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . 28

STATE COURT DOCKET PAGES . . . . . . . . .    These two pages appear following page 28



## TABLE OF CITATIONS

<u>CASES</u>:

Aloi v. Abrams
    500 F.Supp. 170 (SD NY 1980), aff'd without opinion
    647 F.2d 161 (2d Cir. 1981) . . . . . . . . . . . . . . . . . . . 13

Benton v. Washington
    106 F.3d 162 (7th Cir. 1996): . . . . . . . . . . . . . . . . . . 12

Carlson v. Pitcher
    137 F.3d 416 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . 12

Commonwealth v. Bruner
    388 Pa.Super. 82, 564 A.2d 1277 (1989) . . . . . . . . . . . . . . 4

Daniels v. U.S.
    121 S.Ct.1578 (2001) . . . . . . . . . . . . . . . . . . . . . . 22

Davis v. Adult Parole Authority
    610 F.2d 410 (6th Cir. 1979) . . . . . . . . . . . . . . . . . . 21

Isham v. Randall
    226 F.3d 691 (6th Cir. 2000) . . . . . . . . . . . . . . . . . . 25

Lackawanna County Dist. Attorney v. Coss
    121 S.Ct. 2157 (2001) . . . . . . . . . . . . . . . . . . . . 22, 23

Moseley v. French
    961 F.Supp. 889, 892 (M.D.N.C. 1997) . . . . . . . . . . . . . 25, 26

Page v. Schweiker,
    786 F.2d 150, 154-155 (3d Cir. 1986) . . . . . . . . . . . . . 11, 14

Smith v. Yeager
    393 U.S. 122, 89 S.Ct. 277, 21 L.Ed.2d 246 (1968), on remand
    336 F.Supp. 1287 (DCNJ 1971), aff'd 451 F.2d 164 (3d Cir. 1971),
    cert.den. 404 U.S. 859, 92 S.Ct. 112, 30 L.Ed.2d 101 (1971) . . . . . . . . . 13




Strahan v. Blackburn
 750 F.2d 438 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . 22

Taylor v. Lee
 186 F.3d 557 (4th Cir. 1999) . . . . . . . . . . . . . . . . . . . 26

Townsend v. Sain,
 372 U.S. 293, 83 S.Ct. 745, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) . . . . . . . 8, 10

Walker v. Lockhart
 726 F.2d 1238 (8th Cir. 1984) cert. dismissed 479
 U.S. 1222, 105 S.Ct. 17, 82 L.Ed.2d 912 (1984) . . . . . . . . . . . . 13

Zillich v. Reid
 36 F.3d 317, 319 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . 10


COURT RULES:

 Fed.R.Civ.P. 60(b)(6) . . . . . . . . . . . . . . 2, 10, 14, 15, 18, 21, 23, 27

 Rules Governing § 2254 Cases, Rule 4 . . . . . . . . . . . . . . . . . 7, 8

 Rules Governing § 2254 Cases, Rule 8 . . . . . . . . . . . . . . . . . 7

STATUTES:

 28 U.S.C.A. § 2244 . . . . . . . . . . . . . . . . . . . 11-14, 23-26
 28 U.S.C.§ 2254(d) . . . . . . . . . . . . . . . . . . . 2, 3, 5, 6, 10, 11

OTHER AUTHORITIES:

 Moore's Federal Practice (3d Ed.) § 90.41[4][b][iii] at n.60 . . . . . . . . . . . . . 11

## SUMMARY OF ARGUMENT

At the outset, Respondents seek to point out that the question of inattentiveness by petitioner's counsel to the procedural aspects of the case has little or no genuine bearing upon the question of whether Rule 60(b)(6) relief should be accorded to petitioner. The real basis for the Court's denial of the habeas petition was the fact that the record, which the court independently reviewed, fully confirms that petitioner's claims did not warrant a grant of habeas relief. To the contrary, such review mandated, and continues to mandate, denial of the petition

Respondents also demonstrate that because the Court's order which denied the habeas petition was a final appealable order, if petitioner was aggrieved by its terms he had an obligation to appeal. Having failed to appeal, petitioner cannot be heard to request that he should be permitted to utilize Rule 60(b)(6) as a substitute for appeal.

Despite the foregoing considerations which ought to control disposition of petitioner's Rule 60(b)(6) motion, the respondents will nevertheless also demonstrate that the relief petitioner seeks should not be granted because he failed to make his Rule 60(b)(6) motion "within a reasonable time" as the rule requires, that his arguments fail to take into consideration the prejudice to the Commonwealth and its society which would result from a grant of relief and, finally, that it appears that his habeas petition itself was not timely filed and accordingly he is not entitled to habeas relief in any event.



ARGUMENT

**1.     Because The Denial Of Petitioner's Habeas Petition Was Based Upon The Court's Independent Review Of The Record (And Because The Record, When Measured Against The Provisions Of <u>28 U.S.C.§ 2254(d)(1)&(2)</u>  Fully Supports Denial Of Petitioner's Habeas Petition) The Inattentiveness Or Not Of Petitioner's Counsel To Procedural Aspects Of The Case Has No Genuine Bearing Upon The Correctness Of The Court's Order Which Denied The Petition And Ordered The Case Closed.**

In Petitioner's statement of the <u>Issues,</u> on page 2 of his brief, Petitioner appears to suppose that the dismissal of his original petition occurred *solely* because his former counsel failed to file a supporting brief (compounded, perhaps, by a further failure of his former counsel to have filed objections or exceptions to the Report of the Magistrate).

Such a supposition is not warranted.  The Court's Order dated October 6, 2000, recites that two independent grounds were listed by the Court as supportive of the Court's action:

(a)     The Court's  ". . . consideration of the Report of the United States

Magistrate Judge dated September 11, 2000, to which no exceptions have been filed, . . ."

and

(b)     The Court's ". . . independent review of the record. . . ."

Respondents assert that it is of little real consequence that Mr. Tooley's former counsel failed to file any brief or exceptions because, as respondents expect to demonstrate, the second of the grounds listed above: the Court's independent review of the record, fully and adequately supports the Court's denial of Mr. Tooley's habeas petition.

The primary thrust of this brief will be to demonstrate that petitioner's motion to reopen the petition for writ of habeas corpus does not hinge on the question of whether the provisions of <u>Fed.R.Civ.P. 60(b)(6)</u> can be stretched to cover the inattentiveness of attorney Drost.  It hinges

2



instead upon the applicablilty of 28 U.S.C. § 2254(d)(1)&(2) to the allegations of Mr. Tooley's

habeas petition as measured against the Court's independent review of the record.

**1.A.    An Independent Review of the Record Confirms That the Order of Dismissal Was Entirely in Harmony with the Provisions of 28 U.S.C.§ 2254(d)(2).**

If the record which the Court stated it independently reviewed supports the Order

denying habeas relief to Mr. Tooley, the motion to re-open should be denied.

The Order which Magistrate Judge Smyser entered on July 19, 2000, contains, on page 4,

the accurate observation that "the petitioner has summarily set forth the claims and the

respondents have summarily denied that the trial court erred."  However, the Magistrate Judge's

further conclusion on page 4 that: ". . . we do not have enough information to make a report and

recommendation concerning the disposition of the petitioner's petition. . . ." is somewhat less

accurate because there is appended to the Answer, timely filed on behalf of the respondents, the

complete opinion of the Superior Court of Pennsylvania which contains sufficient information to

enable an informed and legally correct conclusion that Mr. Tooley's habeas petition should be

denied.

Tooley's contention of unlawful detention by the state is entirely based upon the two

grounds set forth in paragraphs 6.(i) and 6.(ii) of his petition:

"(ii [sic]      The trial court deprived the petitioner of due process of law under the Fourteenth Amendment to the United States Constitution when it refused to grant a mistrial after the Commonwealth elicited testimony ruled inadmissible prior to trial."

and

"(ii)      Petitioner was deprived of due process of law under the Fourteenth Amendment to the United States Constitution when the trial court, over objection, permitted the Commonwealth to introduce the prior consistent statement made by the alleged victim."

3



The Pennsylvania Superior Court, on pages 6 and 7 of its opinion filed April 29, 1996 (a

copy of which is among the documents appended to the Answer filed on behalf of respondents)

addressed and ruled upon both of the contentions which Mr. Tooley raised in paragraph 6 of his

habeas petition. The Superior Court, in parts here pertinent, stated:

> "Appellant next argues that the trial court erred in denying his motion for a
> mistrial when the victim allegedly testified to other acts of misconduct which were
> barred by Appellant's motion in limine.
>
>    *     *     *
>
> ". . . Appellant objected to [such] testimony and moved for a mistrial; however,
> the trial court overruled his objections and denied his motion."
>   (Opinion of the Pennsylvania Superior Court, filed April 29, 1996, at p.p. 6-7)

The Superior Court, on page 8 of its April 29, 1996 Opinion explained that its standard

of review of such contentions was defined by <u>Commonwealth v. Bruner</u>, 388 Pa.Super. 82, 564

A.2d 1277 (1989), quoted portions of which it set forth in the Opinion at page 8, before

concluding:

> "We find that the references complained of, although arguably improper, did not
> prejudice the jury as to render it unable to remain impartial. First, such references never
> overtly implicated Appellant in any direct manner. When read in context, since the
> Commonwealth introduced no testimony about Appellant's relationship with Jackie
> Goznell or any other alleged victims, it is difficult to conclude that the testimony refers
> to other, similar bad acts, as Appellant suggests. To the contrary, the Commonwealth
> clearly focused only upon Appellant's acts relating to the victim. Furthermore, the
> testimony in question merely provided the basis for how the victim attempted to explain
> herself to the court and to her mother. In this context, the testimony complained of at
> most contains only "passing references" to other bad acts on the part of the Appellant.
> Thus, we find that the record supports the trial court's denial of Appellant's motion for a
> mistrial."  (Opinion of the Pennsylvania Superior Court, filed April 29, 1996, at p.p. 8-9)

The Opinion of the Pennsylvania Superior Court, filed April 29, 1996, a copy of which

was appended to the respondents' Answer, extensively and accurately quotes all of the the facts

and evidence upon which the Superior Court grounded it's affirmance of the state trial court's

denial of Appellant's motion for a mistrial.   Moreover, there also is appended to respondent's

Answer an excerpted portion of the state court trial transcript containing the trial testimony of

Elizabeth Getz, a minor (which petitioner accurately asserts, in paragraph 6 of his habeas

petition, ". . . was read into the record by a representative of the Commonwealth . . .") as well as

the testimony which the same Elizabeth Getz gave "live" at Mr. Tooley's preliminary hearing.

These transcripts readily confirm: (a) that the facts upon which the Superior court rendered its

decision were the *actual* facts adduced at trial and (b) that the "testimony" of Elizabeth Getz

which was read into the record by a representative of the Commonwealth, was an accurate

recital of the "live" testimony given by the child at Tooley's preliminary hearing.

    From these transcripts and from the Opinion of the Superior Court, both of which were

made part of the Answer to Tooley's Petition for Writ of Habeas Corpus, it readily can be seen

that the decision of the Superior Court was *not* (within the contemplation of 28 U.S.C.§

2254(d)(2)) "based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."   It therefore follows that Judge Caldwell's Order

denying Mr. Tooley's petition for a writ of habeas corpus, based as it was upon Judge Caldwell's

recited "independent review of the record" was entirely justified by the provisions of 28 U.S.C.§

2254(d)(2).   Under the limited "facts" necessarily to have been considered in a correct denial of

habeas relief under subsection (d)(2), no evidentiary hearing is necessary absent some genuine

assertion (or some factor plainly apparent of record) tending to suggest that the Superior Court's

factual assessments were somehow incorrect.



**1.B.    An Independent Review of the Record Discloses That the Order of Dismissal Was Entirely in Harmony with the Provisions of 28 U.S.C.§ 2254(d)(1).**

Having shown that subsection 2254(d)(2) justifies the order of dismissal, it remains to be shown that Judge Caldwell's Order and its implicit assessment of Mr. Tooley's contentions is also in harmony with the "...contrary to..." or the "...unreasonable application of..." requirements contained in 28 U.S.C. 2254(d)(1). Before undertaking to demonstrate that Judge Caldwell's Order and its implicit assessment of Mr. Tooley's contentions is in harmony with the provisions of 28 U.S.C. § 2254(d)(1), it will be helpful to view the provisions of subsection (d)(1) in context with the portion of section 2254(d) which precedes subsection (d)(1). Those two parts of the statute are to be read together as follows:

> "(d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of *clearly established* Federal law, *as determined by the Supreme Court* of the United States; . . ." (Italics supplied.)

It safely can be asserted that neither the State trial court adjudication which overruled Tooley's objection to the presentation of Elizabeth Getz's testimony nor the State trial court's denial of Tooley's motion for a mistrial (both of which were affirmed by the Superior Court following a plain explanation of the rationale for affirmance) were adjudications that are ". . . contrary to, or [which] involved an unreasonable application of *clearly established* Federal law, *as determined by the Supreme Court* of the United States; . . ." The fact that such an assertion can safely be made would seem to be all that is necessary to validate the rectitude (under 28 U.S.C. § 2254(d)(1)) of Judge Caldwell's Order dated October 6, 2000, denying Mr.



Tooley's petition for a writ of habeas corpus.

It is the Judge of the District Court and not the Magistrate Judge who, under the provisions of Rule 4 of the Rules Governing § 2254 Cases, bears the ultimate authority to dismiss habeas corpus petitions. Rule 4 provides, in pertinent part: ". . . If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified. . . ." 28 U.S.C. foll. § 2254. This rule, providing for summary dismissal, would appear, at first blush, to furnish full basis for the summary dismissal in this case. However, a more careful reading of Rule 4 might suggest (and Petitioner presumably would seek to so argue) that although Rule 4 permits summary dismissal *before* any answer is filed it does not expressly authorize summary dismissal *after* an answer has been filed.

No decisions have been found which squarely address the question of whether summary dismissal continues to be appropriate after an answer has been filed, but logic suggests that where the answer, as is the case here, tends merely to amplify upon facts set forth in the petition (as distinguished from an answer which supplies independent grounds for dismissal), that dismissal without a hearing is an appropriate procedure either before or after the filing of an answer. The logic of such reasoning is fortified by the provisions of Rule 8(a) and of Rule 8(b)(4) of the Rules Governing § 2254 Cases. Rule 8(a) provides:

> " **(a) Determination by court.** If the petition is not dismissed at a previous stage in the proceeding, the judge, after the answer and the transcript and record of state court proceedings are filed, shall, upon review of those proceedings and of the expanded record, if any, determine whether an evidentiary hearing is required. If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the petition as justice shall require." 28 U.S.C. foll. § 2254.

7



It would seem therefore that if the October 6, 2000 Order of Judge Caldwell was not procedurally appropriate under Rule 4 because an answer had been filed, the Order nevertheless would constitute ". . . such disposition of the petition as justice shall require. . . ." under the quoted provisions of Rule 8(a). This view seems consistent with the *Advisory Committee Notes* set out following Rule 8 which, in several places make specific reference to the Supreme Court's observations contained in <u>Townsend v. Sain</u>, 372 U.S. 293, 83 S.Ct. 745, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). In the first such reference to <u>Townsend v. Sain</u>, supra, the *Advisory Committee Notes* which follow Rule 8 quote from 372 U.S. 293, 319 as follows:

> "Ordinarily [the complete state-court] record — including the transcript of testimony (or if unavailable some adequate substitute, such as a narrative record), the pleadings, court opinions, other pertinent documents — is indispensable to determining whether the habeas applicant received a full and fair state-court evidentiary hearing resulting in reliable findings."                    <u>28 U.S.C. foll. § 2254</u>.

Here we have, appended to the Answer filed by respondents, and available for utilization as part of the independent review of the record upon which the Court premised its Order, all pertinent documents which the Supreme Court stated are indispensible to demonstrate that the state court hearings accorded petitioner were full and fair; resulting in reliable state court findings or adjudications:

- the brief which petitioner filed in the Pennsylvania Superior Court, containing all the contentions which petitioner raised in the Superior Court,

- the transcript of the trial containing the prior testimony which had been read into the record and which petitioner claimed offended his constitutional rights,

- the transcript of the preliminary hearing which contains the reported "live" testimony which, at trial had been read into the record, and, importantly,

8



the opinion of the Superior Court of Pennsylvania containing the reasons upon which the

state court adjudications were based.

A further document which tends heavily to validate the correctness of the legal

conclusion (that the record before him was adequate to a proper and correct final order of

dismissal) which, implicitly, Judge Caldwell had to have considered in concluding that although

the record was less that *fully* complete it was adequate, is the *Petition For Allowance of Appeal*

which Mr. Tooley filed in the Pennsylvania Supreme Court. That *Petition* lists only four

grounds upon which Tooley sought review: the two which he asserted in his federal habeas

petition and two others for which, evidently, he no longer seeks relief. If Mr. Tooley were to

have contended that there were matters in the record before the Superior Court which the

Superior Court should have considered but didn't, it was Mr. Tooley's obligation to have

included such contention as a fifth ground for his *Petition For Allowance of Appeal*. Having

failed to plead such a contention in the Pennsylvania Supreme Court, he is estopped[1] to belatedly

---

[1]        It may be that "estoppel" (in its broadest sense) is less-than-fully applicable, but concepts of preclusion, in the nature of estoppel assuredly are a part of the point which respondents seek to make. Estoppel by record (which is what is being alluded to here) is sometimes referred to as a technical estoppel since the governing rules can be applied with certainty in appropriate cases. Maitland v. University of Minnesota 43 F.3d 357 (8th Cir. 1994), appeal after remand 155 F.3d 1013, rehearing and suggestion for rehearing denied.
        It may be that the concept sought to be asserted is "waiver" - the deliberate relinquishment of a legal right. Hoffer v. Morrow, 797 F.2d 348 (7th Cir. 1986).
        The sought-after name for the precise preclusionary concept upon which respondents rely in this context may well be as simple a "failure to exhaust state remedies." Although "exhaustion" was admitted in the answer to Mr. Tooley's original petition, the claim of exhaustion will be denied should Mr. Tooley seek presently to assert that the record before the Superior Court (and before Judge Caldwell as well) was somehow inadequate to a full and fair state court adjudication (in the sense alluded to in Townsend v. Sein as previously quoted) and consequently inadequate to justify Judge Caldwell's announced reliance upon that record in entering the Order which dismissed Tooley's habeas petition.

9

raise the contention in federal court.

It seems not to really matter what method of analysis is used; the really obvious point is that Judge Caldwell's reliance upon the record which was before him at the time he ordered dismissal of Mr. Tooley's habeas case was more than adequate, under the terms of 28 U.S.C.§ 2254(d) to justify the entry of the order.

The Third Circuit Court, in deciding Zillich v. Reid 36 F.3d 317, 319 (3d Cir. 1994), recently relied upon Townsend v. Sain, supra, to observe: "Where the facts are in dispute, the federal court must hold an evidentiary hearing if the habeas applicant did not receive a full and fair hearing in a state court, either at the time of trial or in a collateral proceeding."  Respondents believe and urge that Mr Tooley *did* ". . . receive a full and fair hearing in a state court, . . ." both at the time of his trial *and* during the course of his appeals as well as in the PCRA collateral proceeding which he asserts he pursued.  An evidentiary hearing was not and is not warranted to vindicate the rectitude of the order, based upon the Court's independent review of the record, denying Tooley's habeas petition and dismissing Tooley's case.

> **2.    The Remedy, If Any, Which Petitioner Might Have Had Following Entry of the Final Judgment Dismissing His Petition and Ordering the Case Closed Was Appeal; Petitioner's Rule 60(b)(6) Motion Should Not Properly Be Permitted to Function as a Substitute for Petitioner's Obligation to Have Appealed If He Was Aggrieved by the Final Judgment of Dismissal.**

If, during the course of these proceedings to re-open, it should somehow become apparent (or even arguable) that the state trial court or appellate court adjudications concerning Mr. Tooley's objections to testimony and consequent motion for a mistrial constituted decisions that were ". . . contrary to, or involved an unreasonable application of *clearly established* Federal law, *as determined by the Supreme Court* of the United States; . . ." and that therefore the Order

10



of dismissal was *erroneous* under the provisions of 28 U.S.C. § 2254(d)(1), there would still be no basis for Rule 60(b)(6) relief.

If the judgment of dismissal was based upon an *erroneous* view of the state court adjudications *Tooley's remedy is appeal*, not re-opening of an erroneous judgment. "The Third Circuit lacks sympathy for interpretation of Rule 60(b) that would permit extension of time limits for appeal or Rule 59 motions."  Moore's Federal Practice (3d Ed.) § 90.41[4][b][iii] at n.60 citing Page v. Schweiker, 786 F.2d 150, 154-155 (3d Cir. 1986).

**3      Because Petitioner's Claim Was Properly 'Heard' Through the Court's ". . .*independent review of the record. . .*" and Because the Claim Was Proprely 'Determined' Through the Court's Legally Correct Ruling That ". . .*the petition for a writ of habeas corpus is denied. . . .*" the Repetitious "On the Merits" Contentions Appearing in Petitioner's Brief Are Germane to Nothing of Legal Significance; Whether Petitioner Did or Did Not Have an Evidentiary *Hearing on the Merits* of His First Petition Has Legal Bearing Only on the Question of Whether the Court's Implicit Application of 28 U.S.C.A. § 2244 Was Legally Correct and No Bearing Whatever on Whether Petitioner's Rule 60(b)(6) Motion Should Be Granted or Denied**

It is beyond dispute that if Mr. Tooley should file a second or successive petition in which he might seek to revive or to re-assert the claims which he asserted in his first (and to date, only) petition, that such petition would be denied under 28 U.S.C.A. § 2244, simply because of the preclusive effect of the Court's denial of Tooley's first petition.

The assertion advanced by Petitioner in the *Conclusion* on page 9 of his brief, and elsewhere[2] in his earlier argument, that his federal habeas petition "has never been decided on its

---

[2]      The contention is repeated at least in the third line of the second paragraph on page 9 of his brief, and (obliquely) in the 5th and 4th lines from the bottom of page 8: "This inaction resulted in dismissal of the petition without hearing." He is more expansive in the middle of page 7 where he asserts: "Mr. Tooley's claim was not determined on its merits...." and



merits" simply is not correct.

Because of these oft repeated "merits" contentions, it is appropriate to examine into the legal effect of a habeas petitioner's "merits" contentions. The term is most often (if not exclusively) used when examining into the restrictions which 28 U.S.C. § 2244(b) places upon second or successive habeas corpus petitions. In Carlson v. Pitcher, 137 F.3d 416 (6th Cir. 1998) the court thoroughly explored the basis for the "merits" restrictions imposed by section 2244(b), concluding its analysis by referring to the Seventh Circuit Court's opinion in Benton v. Washington, 106 F.3d 162 (7th Cir. 1996):

> "In the most extended discussion on the subject, the Seventh Circuit emphasized that the key feature of the analysis was *not* an 'on the merits' determination. *Benton*, 106 F.3d at 164. Many cases end 'short of a decision on the merits,' wrote the *Benton* court, and yet have a preclusive effect." (emphasis in original)

Just as the "key feature of the analysis" in *Benton* was <u>not</u> "an 'on the merits' determination, so too here, the key feature is not an on the merits question, despite the number of times the term: "on the merits" has been repeated in petitioner's brief. Here (as in the many decisions cited in *Benton v. Washington*, supra and in *Carlson v. Pitcher*, supra) the key feature is the preclusive effect of Judge Caldwell's Order dated October 6th, 2000; a final appealable judgment in which, ". . . upon independent review of the record. . ." the Court ordered that:

> " 1)  The petition for a writ of habeas corpus is denied.
>
> 2)  The Clerk of Court shall close this file."

---

in the 9th line of page 6: "Mr. Tooley's habeas petition has never been heard on its merits...." The assertion crops up also in the second line of page 5: "Mr. Tooley's habeas claims have never been heard on their merits." and again in the 8th line of the same page: "The merits of Mr. Tooley's case have not been heard." On page 4 in the seventh line: "...the merits of Mr. Tooley's case have not been heard." It all seems to have begun on page 2 of Tooley's brief where he suggests that his habeas petition was "...denied, but not on the merits."

The reason why, in the federal habeas context, the courts focus on 'preclusive effect' rather than 'on the merits' questions is that concepts of *res judicata* (which depend almost entirely upon an 'on the merits' analysis) have no legitimate place in federal habeas jurisprudence. Smith v. Yeager, 393 U.S. 122, 89 S.Ct. 277, 21 L.Ed.2d 246 (1968), on remand 336 F.Supp. 1287 (DCNJ 1971), aff'd 451 F.2d 164 (3d Cir. 1971), cert.den. 404 U.S. 859, 92 S.Ct. 112, 30 L.Ed.2d 101 (1971). *Cf.*, Walker v. Lockhart, 726 F.2d 1238 (8th Cir. 1984) cert. dismissed 479 U.S. 1222, 105 S.Ct. 17, 82 L.Ed.2d 912 (1984) (Res judicata does not apply to petitione for writ of habeas corpus.), Aloi v. Abrams, 500 F.Supp. 170 (SD NY 1980), aff'd without opinion 647 F.2d 161 (2d Cir. 1981) (Although strict doctrine of res judicata does not apply to habeas corpus under 28 USCS § 2244 District Court has discretion to deny successive application if claim asserted was heard and determined on prior application.).

The claim asserted in Mr. Tooley's habeas petition assuredly <u>has</u> has been 'heard and determined' in the sense that those terms were used in Aloi v. Abrams, supra. The claim was 'heard' through Judge Caldwell's ". . .independent review of the record. . ." and the claim was 'determined' when Judge Caldwell ruled that ". . .The petition for a writ of habeas corpus is denied. . . ."

It is beyond dispute that if Mr. Tooley should file a second or successive petition in which he might seek to revive or to re-assert the claims which he asserted in his first (and to date, only) petition, that such petition would be denied under 28 USCA § 2244, simply because of the preclusive effect of the Court's quoted denial of Tooley's first petition. Whether Tooley did or did not have an evidentiary *hearing* on *the merits* of his first petition would have nothing to do with the inquiry. The repetitious "on the merits" contentions appearing in Tooley's brief

13

(see n. 1, ante) are germane to nothing of legal significance; the only inquiry appropriate at this juncture is into the preclusive effect of Judge Caldwell's Order dated October 6, 2000.

The Order dated October 6, 2000 clearly disposed of Tooley's claims and did so in a manner which, under 28 USCS § 2244, precludes assertion of those claims in any subsequent petition.

But the preclusive effect of the October 6th Order is not its only effect. That Order was also a *final* judgment on the broader sense of the term *Final Judgment*. (" The petition for a writ of habeas corpus is denied. * * * The Clerk of Court shall close this file."). The fact that the October 6th Order was, and remains, a final judgment which, if entered in error should have been appealed, ought to conclude the Rule 60(b)(6) inquiry. Page v. Schweiker, 786 F.2d 150, 154 (3d Cir. 1986) ("We note at the outset that, under well-established principles, Rule 60(b) is not a substitute for an appeal.).

As has been noted earlier in this brief, Mr. Tooley was entitled to file an appeal from the final judgment entered by Judge Caldwell on October 6, 2000, but he failed to do so. He ought not now be permitted to do an "end run" around established federal appellate procedures through his Rule 60(b)(6) motion.

To avoid any inference that respondents, through their contention that appeal was the appropriate remedy, are themselves seeking to do an "end run" around the Rule 60(b)(6) argument, respondents will next demonstrate that there are several very cogent reasons why Mr. Tooley is not entitled to Rule 60(b)(6) relief in any event.

**4.    Petitioner Is Not Entitled to Rule 60(b)(6) Relief Because His Application for Such Relief Was Not, as the Rule Requires, Filed "Within a Reasonable Time."**

The first of the reasons why Mr. Tooley is not entitled to Rule 60(b)(6) relief is that Mr. Tooley's Rule 60(b)(6) Motion was not filed within the "reasonable time" which the rule requires.

On the pages of this brief which next follow, respondents have set forth a kind of annotated timetable of certain activities regarding Mr. Tooley's habeas corpus case which directly bear upon the issue of whether, as required by Fed.R.Civ.P. 60(b), the Rule 60(b)(6) motion [filed on Mr. Tooley's behalf by Attorney van der Veen on May 21, 2001] was ". . . made within a reasonable time, . . . ."

May 30, 2000                A handwritten letter from Mr. Tooley to Attorney van der Veen on May 30, 2000 is appended to *Petitioner's Brief in Support of Petition to Re-Open Petition for Writ of Habeas Corpus* [Petitioner's Brief].

June 2, 2000                The Petition for Writ of Habeas Corpus was filed by Attorney John Drost on Mr. Tooley's behalf.

It seems evident that the handwritten letter dated May 30, from Mr. Tooley to Attorney van derVeen, which pre-dated the actual filing of the petition by Mr. Drost (on June 2, 2000), was written to Attorney van der Veen *promptly* upon receipt by Mr. Tooley of the habeas petition proposed for filing by Attorney Drost, and which Mr. Tooley seems to have thought already had been filed.  In this letter to Attorney van der Veen, Mr. Tooley expressed to the lawyer some bewilderment over the quantity and quality of Attorney Drost's efforts.  The tenor and promptness of this letter suggests quite strongly that when Mr. Tooley felt a need for information or assurance concerning his federal habeas case he not only (a) was able to recognize the problem, but also (b) that he

15

felt an on-going entitlement to correspond with Attorney van der Veen concerning such

matters. The letter provides what appears to be a reasonable indication for why Mr.

Tooley felt entitlement to seek assurance from Attorney van der Veen even though it was

Attorney Drost who was (or soon would be) counsel of record in the federal court

proceedings:

> " . . . Please give me some assurance as to what my family and I were told
> before taking my case or any money, and that was you wouldn't take the case if ya
> [sic] couldn't help by getting some kind of relief. I am very sorry but I don't have
> a very good feeling on what Mr. Drost filed. Like I said I know very little about
> these state courts and laws and less about federal, I hope that you can write and
> explain too [sic] me just how what Mr. Drost filed will get me some relief, there
> must be more too [sic] this. Please reply ASAP and thank you for your time
> patiences [sic] with me.
> Sincerely,
> Fred Tooley"

Mr. Tooley's choice of words in this letter strongly suggests that Tooley felt that

he had two lawyers: Attorney Drost, who through Attorney van der Veen's reference had

agreed to be Tooley's counsel of record, and Attorney van der Veen whom Tooley and his

family had initially consulted and to whom, according to Tooley, had paid money:

(". . .Please give me some assurance as to what my family and I were told before taking

my case or any money.") If such money was actually paid to Attorney van der Veen it

was, presumably, for supervision of Drost's efforts by van der Veen (". . . you [told us

you] wouldn't take the case if ya couldn't help by getting some kind of relief. . . .").

Such an interpretation of Mr. Tooley's letter dated May 30, 2000, which he wrote

to Attorney van der Veen is not the only possible interpretation but it is an interpretation

which tends to explain the intensity of some of the efforts which, in Petitioner's Brief

16



(particularly at page 4) Attorney van der Veen states that he expended on behalf of Mr. Tooley. (". . . Mr. van der Veen placed dozens of phone calls and sent numerous letters and faxes to Mr. Drost. All phone calls and letters went unanswered. * * * On several occasions, Mr. van der Veen physically drove to Mr. Drost's office and waited there for hours until he arrived. . ."). Lawyers don't usually exert such Herculean efforts gratuitously, but they oft-times do when they have a stake in the matter

It is not unusual, as the Courts are aware, for a referring lawyer to decline to undertake on-the-record representation, preferring instead to remain "in the background" while other counsel to whom the case has been referred appear as counsel of record. Nor is such an arrangement unethical, provided that any division of fees is accompanied by a corresponding division of responsibility. Moreover, the possibility that such an arrangement may have been undertaken in this case involving Mr. Tooley is not entirely out of harmony with the assertion, on page 3 of Petitioner's Brief that when Tooley asked Attorney van der Veen to represent him ". . . *in* the federal habeas action[ ] Mr. van der Veen declined representation but referred Mr. Tooley to attorney John Drost. . . ."

The precise nature of any relationship between Mr. Tooley and Attorney van der Veen which may have continued beyond the time that Mr. van der Veen declined to represent Mr. Tooley *in* the federal habeas case is not clear but some clarification in this area would be important in determining whether or not the delay in filing the Rule 60(b)(6) motion was reasonable under the circumstances. The Commonwealth intends to demonstrate that the motion was not, in any event, filed within a reasonable time; but if it develops that Mr. Tooley was Attorney van der Veen's client throughout, the delay in

17



filing becomes all the more unreasonable.

June 2, 2000      A letter was sent from Attorney van der Veen to Attorney Drost, enclosing the handwritten letter which Mr. Tooley had written to Attorney van der Veen on May 30 and inviting action by Attorney Drost. This letter between counsel (a copy of which is annexed to Petitioner's Brief) bears the handwritten imperative: "Please call me !!!"

June 2, 2000      A letter (a copy of which is annexed to Petitioner's Brief) from Attorney van der Veen to Attorney Drost plainly suggests that Drost was being less than fully attentive to Mr. Tooley's case.

August 15, 2000     Another letter (a copy of which is annexed to Petitioner's Brief) from Attorney van der Veen to Attorney Drost reinforces the suggestion that Drost was continuing in his less-than-full attentiveness to Mr. Tooley's case and further suggests that Drost had told (someone) that documents (plural) had been filed in Mr. Tooley's case and that members of the Tooley family had become involved in the inquiry.

September 26, 2000    The court docket discloses that Mr. Tooley corresponded directly with the Court to inquire about the status of his case: "re: Requesting additional information." The docket further discloses that on September 11, 2000 the Report and Recommendation of the Magistrate Judge had been filed and served upon counsel.

October 5, 2000     The court docket discloses that the Deputy in Charge had responded to petitioner's letter of September 26: "I enclose a copy of your petition for writ of habeas corpus filed 6/2/00. This is the only filing made by Mr. Drost."

October 27, 2000    A letter (a copy of which is annexed to Petitioner's Brief) from Attorney van der Veen to Attorney Drost makes reference to a copy of a letter from Mr. Tooley dated October 23, 2000, but no copy of Mr. Tooley's letter was annexed to Petitioner's Brief.

Other documents and dates of record in this case bear upon the reasonableness of the time that elapsed before petitioner's Rule 60(b)(6) motion was filed, but the ones listed above are adequate for present argument.

The omission of the letter from Mr. Tooley dated October 23, 2000, which had been

18

enclosed with Attorney van der Veen's letter of October 27, 2000, to Attorney Drost prompts one

to inquire whether the omitted letter might supply details bearing upon the reasonableness of Mr.

Tooley's action (or inaction) following October 5, the date that the Court Clerk had notified

Tooley that the "only filing made by Mr. Drost" was the petition which had been filed four and a

half months earlier.

It must be remembered that Attorney van der Veen, in his letter of August 15 to Attorney

Drost, had referred to ". . .the documents [plural] you said were filed. . . ." This August 15 letter

also indicates the involvement of Mrs. Toomey, presumably with the knowledge of Mr. Toomey.

It is both reasonable and plausible to believe that there was at least some free exchange of

information between and among Attorney van der Veen, Mr. Toomey and in all likelihood Mrs.

Toomey as well. In this connection, it must also be recalled that while the Clerk's Office had

informed Toomey in September that only one document had been filed, someone had been told

that Drost claimed to have filed plural documents.

It is not reasonable to suppose that Mr. Toomey was not aware of this discrepancy in the

numbers.

Moreover, and in light of Mr. Toomey's demonstrated acumen and promptness in

inquiring (in his handwritten letter to Attorney van der Veen on May 30, 2000) about the quality

of Attorney Drost's initial filing, it is both reasonable and plausible to expect that when he was

notified in late September that Drost's initial filing was Drost's only filing, factors which, in the

month of May might merely have caused bewilderment concerning the quality of Mr. Drost's

performance might well, in September of that same year, have thrown Toomey into a panic.

If Attorney van der Veen was co-counsel (though not of record) with Attorney Drost,

there might be room for some panic on his part as well, but the record is insufficiently clear to enable attribution of Attorney van der Veen's conduct to Mr. Toomey.

Attribution is not essential however to the conclusion that there were definite steps which Mr. Toomey could have taken (and which the Commonwealth contends he should have taken) but did not take during the more than seven months which elapsed between late September in 2000 (when the clerk's letter made it clear that the plural documents which someone said Drost had filed proved to be only one document: the initial petition) and May 21, 2001 when a motion to reopen the petition for writ of habeas corpus eventually was filed.

One of the steps that could have been taken would have been for Mr. Toomey, having genuine basis for belief that Mr. Drost was not being truthful about the number of documents he's actually filed, to have written again to the Court, requesting a copy of the court docket. If he didn't know how to do that he could have asked Attorney van der Veen to assist him. Even a telephone call from counsel or from Mr. or Mrs. Toomey to the Clerk's office, if promptly made after receipt of the Clerk's letter of October 5, 2000, would have disclosed to Mr. Toomey (or to Mrs. Toomey or counsel) that on the very next day following the Clerk's letter, that the case had been decided and closed by Judge Caldwell's October 6 Order.

Quite simply too, if through a phone call, letter or otherwise, the fact of Judge Caldwell's Order had been discovered a timely appeal from that Order could have been filed. In such circumstance there is little room for any credible contention that Tooley couldn't very well have appealed from a final order dismissing the case if he didn't know, within 30 days following its entry, that such an order had in fact been entered. If he didn't know, he could have learned of that fact through inquiry which the factual scenario suggests as reasonable. In other words, if he

20

didn't know, he should have known.

But, quite apart from his failure to file a timely Notice of Appeal, petitioner utterly fails to explain why it he waited from early October in the year 2000 until May 3, 2001 before writing again to the clerk (docket entry #12) to inquire about the status of his case. So great a delay when the consequences for the delay might be so profound cannot be regarded as "reasonable" in the context of Rule 60(b) which requires that Rule 60 motions "shall be made within a reasonable time."

One consequence of petitioner's delay of approximately seven months before taking action is that such delay compounded the prejudice to the Commonwealth which would arise in the event re-trial of Mr. Tooley was sought on charges resulting in a judgment of conviction and sentence which the Commonwealth and its society had long-standing entitlement to regard as final.

More than eight years have elapsed since the date(s) upon which Mr. Tooley committed the crime(s) for which he was convicted; charges initially were filed against him in the state courts on May 5, 1993 for his conduct which occurred some time earlier. During those eight years the Commonwealth's ability to re-try Mr. Tooley has been markedly prejudiced by factors which include the likelihood that memories have faded and the near-certainty that witnesses may presently be difficult or impossible to locate.

Petitioner argues[3] that without more, delay should not be regarded as working prejudice

---

[3]     Tooley's reliance, at page 9 of his brief, upon Davis v. Adult Parole Authority, 610 F.2d 410 (6th Cir. 1979) is misplaced. Considerations warranting application of the provisions of Rule 9 of the special Rules Governing Habeas Cases are not persuasive to motions filed under Fed. R. Civ. P. 60(b) where the impact that delay may have on retrial is a highly material consideration to the grant or denial of 60(b)(6) relief. In Rule 9 cases, the effect which

*per se* to the state. Such an argument is not entirely sound because currently evolving principles of federal habeas jurisprudence (under section 2254 and section 2255 as well) plainly teach that prejudice to the state occurs when, without urgent and compelling reason, the finality of state convictions is disturbed or judicial "ease of administration" is unnecessarily frustrated. <u>Daniels v. U.S.</u>, 121 S.Ct.1578 (2001), <u>Lackawanna County Dist. Attorney v. Coss</u>, 121 S.Ct. 2157 (2001). In the first reported of these two related cases the Court anounced: "We grounded our holding in *Daniels* on considerations relating to the need for finality and ease of administration." <u>Coss</u> supra, 121 S.Ct 1567, 1573. The Court then went on to explain why this is so, and why, in the federal courts, recognition of the need for finality of state court convictions is so compelling:

> ". . . The first and most compelling interest is in the finality of convictions. Once a judgment of conviction is entered in state court it is subject to review in multiple forums. Specifically, each state has createed mechanisms for both direct appeal and state postconviction review [citation omitted] even though there is no constitutional mandate that they do so. [citations omitted]. Moreover, § 2254 makes federal courts available to review state criminal proceedings for compliance with federal constitutional mandates.

> "As we said in *Daniels*, '[t]hese vehicles for review . . . are not available indefinitely and without limitation.' [Citation omitted]. A defendant may choose not to seek review of his conviction within the prescribed time. Or he may seek review and not prevail, either because he did not comply with procedural rules or because he failed to prove a constitutional violation. In each of these situations, the defendant's conviction becomes final and the State that secured the conviction obtains a strong interest in preserving the integrity of the judgment.

> *      *      *

> "An additional concern is ease of judicial administration of challenges to expired state convictions. *   *   * As time passes, and certainly once a state sentence has been served to completion, the likelihood that trial records will be retained by the local courts and will be accessible for review diminishes substantially." *Id.*, 121 S.Ct. 1573-74

---

delay might have on possible retrial is not properly a factor. <u>Strahan v. Blackburn</u>, 750 F.2d 438 (5th Cir. 1985) ("Impact that delay may have on a possible retrial is not to be considered [in applying Rule 9].")

Admittedly, the cases which gave rise to the foregoing pronouncements involved prisoners seeking to launch attacks on fully expired convictions, which is not the case with Mr. Tooley's petition. But the need to accord respect to finality of state convictions and ease of administration is not limited to habeas attacks on fully expired convictions; that need applies in all federal habeas cases. And it is the petitioning prisoner who (under concepts of fianality and ease of administration) must ultimately bear responsibility for his own failure to demonstrate a constitutional claim of substance or his failure to comply with procedural requirements: "The general rule we have adopted here and in *Daniels* reflects the notion that a defendant properly bears the consequences of either foregoing otherwise available review of a conviction or failing to demonstrate constitutional error." *Id.*, 121 S.Ct. 1575

The letters annexed to Petitioner's *Brief In Support of Petition to Re-Open Petition for Writ of Habeas Corpus*, when viewed in the full context of the record in this case appear to raise more questions than the *Brief* answers. The delay of Mr. Tooley in filing his petition is evident; the explanation for such delay is virtually non-existent. Petitioner has not shown that his Rule 60(b)(6) Motion was made within a reasonable time and his assertions that respondents have suffered no prejudice are inadequate and unconvincing.

A consideration having a bearing on whether Mr. Tooley's Rule 60(b)(6) Motion was made within a reasonable time, but yet far more fundamental to his entitlement to any releif whatever is the question of whether Mr. Tooley's habeas petition itself was filed prior to the expiration of the one-year statute of limitations established for federal habeas petitions by 28 U.S.C.§ 2244(d)(1) & (d)(2) which provides:

"**§ 2244. Finality of determination**

    \*              \*              \*

(d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—

        (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.

    \*               \*              \*

    (2)  The time during which a properly filed application for State post-conviction or other collateral review is pending shall not be counted toward any period of limitation under this subsection."

It will be shown that at least 414 days countable days elapsed between the date that Mr. Tooley's judgment of conviction became final and June 2, 2001, when his federal habeas petition was filed in this Court.

    I.      The state court docket sheet, a copy of which is annexed to this brief discloses that Tooley's state court PCRA petition was filed on July 19, 1997 and the state court order denying PCRA relief was entered on November 17, 1998.  The period between July 19, 1998 and November 17, 1998 should not be counted agains Mr. Tooley because his PCRA petition was "pending" during this period within the contemplation of the language of 28 U.S.C. § 2244(d)(2) as quoted above.  However the time prior to this period can and should be counted against Mr. Tooley.  His direct appeal efforts ended and his conviction thereby became final on March 21, 1997 (see attached State Court docket) when the Pennsylvania Supreme Court entered its order denying Tooley's petition for allowance of appeal.  One hundred twenty seven (127) days elapsed between March 21, 1997 and July 16, 1997 when he filed his PCRA petition and these 127 days should be counted because no PCRA petition was "pending" during such period.

    II.      The state court docket also discloses that on December 15, 1998 Mr. Tooley filed a Notice of Appeal to the Pennsylvania Superior Court seeking review of the trial court's

November 17th order denying PCRA relief.  This constitutes a period of 28 additional days

which ought not be considered (under the terms of 28 U.S.C.§ 2244(d)(2)) as tolling the one year

time period set forth in 28 U.S.C.§ 2244(d)(1).  The legal reasoning upon which these 28 days

ought not be considered as part of the tolling period is cogently expressed in Moseley v. French,

961 F.Supp. 889, 892 (M.D.N.C. 1997) where the court was faced with a death-sentenced

prisoner who sought to argue that a period of 59 days following denial of the prisoner's state post

conviction petition which preceded the actual filing of the prisoner's state supreme court

certiorari petition in which he sought review of the lower court's denial of post-conviction relief

should be excluded.  The court rejected (as contrary to the expressed intent of Congress in

enacting the one year period which 28 U.S.C.§ 2244(d)(1) provides) petitioner's contention that

the preparation time for the appeal of the denial of his post-conviction petition should not be

counted against him.  In holding that the 59 days' preparation time must be excluded from the

tolling period, the court stated:  "The one-year period expresses Congress' judgment on the

amount of time reasonably necessary to file the state and federal post conviction motions.  The

one-year period is given for the very purpose of preparing petitions, motions, etc., and therefore

cannot be considered a tolling event."  Id. 961 F.Supp. at 892.  Accord, Isham v. Randall, 226

F.3d 691, 695 (6th Cir. 2000) wherein the court stated:

> "Defendant argues, however, that the time in which he could have petitioned the
> United States Supreme court for a writ of Certiorari should also toll the limitations
> period of § 2244(d)(2).
>
> Our circuit has not yet considered the issue raised by defendant, but other courts
> that have addressed the matter have rejected similar arguments.  [Citations omitted.]  We
> join these courts and hold that § 2244(d)(2) does not toll the limitations period to take
> into account the time in which a defendant could have potentially filed a petition for
> certiorari with the United States Supreme Court, following a state court's denial of post-

conviction relief.

       *               *              *

". . . [I]t is unlikely that Congress intended to nevertheless toll § 2244(d)'s limitations period when no petition for a writ of certiorari is even filed with the Supreme Court. This seems particularly true when Congress made it clear that one of its purposes in enacting AEDPA was to curb the protracted nature of habeas corpus proceedings."

Other courts, including the Fourth, Ninth and Tenth Circuits have reached the contrary conclusion, *c.f.*, Taylor v. Lee, 186 F.3d 557, 560-61 (4th Cir. 1999) (abrogating Moseley v. French, 961 F.Supp. 889 (M.D.N.C. 1997). It does not appear that the Third Circuit has yet had opportunity to address this issue, but that factor seems to be of no great moment because even if the 28-day period in question is omitted from the 414 day calculated total, 386 days still remain; Tooley is still twenty days beyond the one year period of limitations established by 28 U.S.C.§ 2244(d)(1).

III.      Also to be included in the total are the 259 days which elapsed between September 15, 1999, when the Pennsylvania Superior Court affirmed the trial court's denial of PCRA relief [see annexed state court docket] and June 2, 2000, when Tooley's federal habeas petition was filed.

When the 259 days disclosed above in paragraph III and the 28 days disclosed by paragraph II are added to the 127 days disclosed in paragraph I there derives a total of 414 days which; fatally to Mr. Tooley's position are 49 days beyond the 365 days allotted to him by 28 U.S.C.§ 2244(d). If the 28 days derived in paragraph II are excluded from the total it remains apparent that Tooley's federal habeas petition was not filed until 21 days after the one year period of limitations had expired.

When these 414 (or 386) days of delay are increased by the additional delays of more

than six months (at least from from early October in the year 2000 until May 3, 2001, as has been shown) which were solely occasioned by *unexplained inaction* on the part of Tooley or his attorney(s) in making his Rule 60(b)(6) motion it becomes merely a question of how much delay is to be tolerated before someone says: "That much delay is too much delay."

Independently of Mr. Tooley's delays prior to the time he filed his habeas petition, the six months or more of delay by Tooley before making his Rule 60(b)(6) motion serve mightily to compound the obvious prejudice to the Commonwealth and its society, arising by reason of the equally obvious difficulties of re-trial so many years after the crimes.

CONCLUSION

The Rule 60(b)(6) motion to re-open the judgment of dismissal should be denied.

Respectfully submitted, June 26, 2001

William P. O'Malley
Assistant District Attorney
Office of the District Attorney
Lackawanna County Courthouse
Scranton, PA 18503

(570) 963-6717

27

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on ~~July 11~~, 2001, I served a copy of this

Brief by first-class U.S. Mail, postage prepaid upon the persons named below at their addresses

respectively listed:

Michael T. van der Veen, Esq.
Kats, Jamison, van der Veen & Associates
25 Bustleton Pike
Feasterville, PA  19053

Ernest D. Preate, Jr. Esq.
Levy & Preate
Suite 600, Scranton Electric Building
507 Linden Street
Scranton, PA  18503

William P. O'Malley
Assistant District Attorney
Office of the District Attorney
Lackawanna County Courthouse
Scranton, PA  18503

28



```
10565506182001        Lackawanna County - Clerk of Courts        Pa
    CCS835                     Docket Entries                       
```

Case No 1994-00558
    (VS) TOOLEY FREDERICK E

Date
Filed

---

**1/20/1996**  DOCKET ENTRIES PRIOR TO THIS DATE MAY BE FOUND ON THE CASE
            SHEET LOCATED IN THE FILE.

---

**1/23/1996**  ORDER OF COURT: FOR RESCHEDULED BAIL HEARING.  BY THE COUR'

---

**1/02/1996**  ORDER HEARING ON BAIL REDUCTION TO BE HELD 2-2-96 BTC

---

**2/22/1996**  PETITION FOR WRIT OF HABEAS CORPUS AD PROSEQUENDUM

---

**3/06/1996**  ORDER REQUEST FOR BAIL AFTER SENTENCING IS DENIED EAGEN,J

---

**3/06/1996**  MEMORANDUM OF LAW MOTION OF BAIL REDUCTION

---

**6/25/1996**  SUPERIOR COURT OPINION AND ORDER; JUDGEMENT AFFIRMED FILE
            RETURNED TO LOWER COURT

---

**9/09/1996**  TRANSCRIPT OF PROCEEDINGS AT SENTENCE

---

**9/19/1996**  FILE TRANSMITTED TO SUPREME COURT OF PA TO DOCKET
            0342 M D ALLOCATUR DOCKET 1996

---

**12/12/1996**  MOTION FOR RECONSIDERATION OF BAIL PENDING APPEAL AND AFFI
             PRO SE

---

**1/09/1997**  ORDER POST SENTENCING BAIL IS DENIED     WALSH J

---

**4/28/1997**  SUPREME COURT DATA SHEET: PAA IS DENIED FILE RETURNED PER

---

**7/16/1997**  MOTION FOR POST CONVICTION COLLATERAL RELIEF

---

**7/17/1997**  ORDER OF COURT: BEN JOSIELEVSKI APPOINTED  EAGEN, J

---

**7/31/1997**  COMMONWEALTH'S ANSWER TO DEFENDANT'S MOTION FOR POST CONVI
            COLLATERAL RELIEF

---

**12/17/1997**  ORDER OF COURT: FOR HEARING.  BY THE COURT MINORA J

---

**1/06/1998**  RULE TO SHOW CAUSE WHY APP FOR POST SENTENCE BAIL SHOULD N
            GRANTED RETURN DATE 2-23 AND HEARING 2-23  WALSH PJ

---

**1/20/1998**  COMMONWEALTH'S RESPONSE TO DEFENDANT'S APPLICATION FOR
            POST SENTENCE BAIL PURSUANT TO PA R. CRIM. PROC. 4009(B)

---

**2/20/1998**  PETITION FOR WRIT OF HABEAS CORPUS AD PROSEQUENDUM

---

**3/05/1998**  TRANSCRIPT OF PROCEEDINGS

---

**3/18/1998**  AMENDED PETITION UNDER THE POST-CONVICTION RELIEF ACT

---



```
10565506182001        Lackawanna County - Clerk of Courts        Page    2
    CCS835                     Docket Entries                     6/18/2001
    Case No 1994-00558
        (VS) TOOLEY FREDERICK E

    Date
    Filed
    5/28/1998    ORDER A HEARING IS SET ON THE POST CONVICTION RELIEF ACT FOR
                 JULY 21 1998
                 CORBETT J.
-----------------------------------------------------------------------------
    6/11/1998    PETITION FOR WRIT OF HABEAS CORPUS AD PROSEQUENDUM  MUNLEY J.
-----------------------------------------------------------------------------
    7/23/1998    ORDER OF COURT: FOR HEARING.  BY THE COURT
-----------------------------------------------------------------------------
    7/23/1998    PETITION FOR WRIT OF HABEAS CORPUS AD PROSEQUENDUM
-----------------------------------------------------------------------------
    7/27/1998    BRIEF IN OPPOSITION TO COMMONWEALTH'S MOTION
-----------------------------------------------------------------------------
    9/02/1998    TRANSCRIPT OF PROCEEDINGS AT PCRA HEARING AUGUST 10, 11, 1998 J COR
                 BETT. 2 VOLS.
-----------------------------------------------------------------------------
    10/01/1998   DEFENDANT'S BRIEF IN SIPPORT OF MOTION FOR POST CONVICTION COLLATER
                 RELIEF
-----------------------------------------------------------------------------
    10/01/1998   MEMORANDUM OF DEFENDANT REGARDING ATTY/CLIENT PRIVILEGE IN PCRA
                 MATTERS
-----------------------------------------------------------------------------
    11/04/1998   COMMONWEALTH'S BRIEF IN OPPOSITION TO DEFENDANT'S PCRA
-----------------------------------------------------------------------------
    11/17/1998   MEMORANDUM & ORDER THAT DEFENDANT'S REQUEST FOR PCRA IS DENIED
                 CORBETT J
-----------------------------------------------------------------------------
    11/25/1998   ORDER PAYMENT BE MADE FOR ATTY FEE
                 CORBETT J
-----------------------------------------------------------------------------
    12/15/1998   NOTICE OF APPEAL TO SUPERIOR COURT IS FILED
-----------------------------------------------------------------------------
    1/06/1999    SUPERIOR COURT OFFICIAL DOCKET RECEIVED; DATED JAN 4, 1999
                 DOCKET #00013MDA99  ; LOWER COURT RECORD DUE: JAN 24, 1999
-----------------------------------------------------------------------------
    1/22/1999    FILE TRANSMITTED TO SUPERIOR COURT
-----------------------------------------------------------------------------
    9/15/1999    SUPERIOR COURT OPINION AND ORDER; AFFIRMED FILE RCVD
-----------------------------------------------------------------------------


                      --- End of Listing ---
```